**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MICHAEL MASSIAH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00066** |
| | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE STATE UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court are (1) plaintiff Michael Massiah's Motion for Relief from Judgment or Order (Doc. No. 59) under Rule 60(b)(1) and, alternatively, Rule 60(b)(6), seeking to vacate the July 22, 2022 Judgment (Doc. No. 58) and the Order (Doc. No. 57) granting the defendant's Motion for Summary Judgment;[1] and (2) Massiah's Motion for an Extension of Time to File Plaintiff's Response to Defendant's Statement of Undisputed Facts and the Plaintiff's Additional Material Facts in Dispute (Doc. No. 61). For the reasons set forth herein, the first motion will be denied on the basis that the plaintiff has failed to show excusable neglect, and the second motion will be denied as moot.

## I.  BACKGROUND

Massiah, through counsel, filed his Complaint against Tennessee State University ("TSU") on January 28, 2021, asserting claims for (1) disability discrimination and failure to accommodate

---

[1] In the Motion for Relief, the plaintiff states that he also seeks an order granting his Rule 15 motion for leave to file a Second Amended Complaint. (Doc. No. 59, at 1.) In his Memorandum in support of this motion, however, he expressly abandons his Motion to Amend, acknowledging that the breach of contract claim he sought to add would be "futile." (Doc. No. 60, at 7.)

a disability in violation of the Americans with Disabilities Act ("ADA") and the Tennessee Disability Act ("TDA"); and (2) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. No. 1.) The court subsequently granted TSU's unopposed Motion for Partial Dismissal and dismissed the ADA and TDA claims as barred by sovereign immunity, leaving for resolution only the plaintiff's Title VII retaliation claim.

TSU filed its Motion for Summary Judgment as to that claim in June 2022, along with a supporting Memorandum of Law, Statement of Undisputed Facts, and a substantial quantity of evidentiary material. Massiah, after having been granted an extension until July 5, 2022, filed his Response to the Motion for Summary Judgment, supporting Memorandum, and various deposition excerpts and exhibits on July 6, 2022, a day late. The plaintiff also attempted to file the Declaration of Michael Massiah. The Clerk struck the document and notified the plaintiff that Massiah's Declaration would be disregarded because it was not signed by the declarant and was not submitted with a certificate of service. The plaintiff attempted to refile Massiah's Declaration two weeks later.[2] Although Massiah's Response referenced his "Additional Material Facts in Dispute," he did not file a Response to the defendant's Statement of Undisputed Facts or a Statement of Additional Material Facts.

The defendant filed a Reply on July 15, 2022, which, among other things, pointed out the plaintiff's failure to respond to its Statement of Undisputed Material Facts:

> Plaintiff did not file a Response to Defendant's Statement of Undisputed Material Facts as required by L.R. 56.01(c). This Court has previously held that, in accordance with L.R. 56.01, if a timely response to a moving party's statement of undisputed material facts is not filed, the asserted facts are deemed admitted for the purpose of summary judgment. Accordingly, the asserted facts in Defendant's

---

[2] The refiled Declaration was still not appropriately authenticated, but the court nonetheless noted that the evidence offered therein, even if accepted as true, was not sufficient to defeat the Motion for Summary Judgment. (Doc. No. 56, at 21.)

Statement of Undisputed Material Facts must be deemed admitted for the purpose of the present Motion.

(Doc. No. 54, at 1–2 (internal citations omitted).) Despite this failure—and its import—thus having been called to the plaintiff's attention, he did not immediately attempt to rectify it.

The court issued a Memorandum and Order on July 22, 2022, granting TSU's Motion for Summary Judgment. The court noted there both that the plaintiff had failed to file a Response to the defendant's Statement of Undisputed Facts and that this failure had been called to the plaintiff's attention by the defendant's Reply. (Doc. No. 56, at 4.) Based on that failure, in accordance with Local Rule 56.01(b), the court deemed the properly supported facts set forth in the defendant's Statement of Undisputed Material Facts to be undisputed for purposes of its Motion for Summary Judgment. In considering the Motion for Summary Judgment, however, the court conducted an extensive examination of the facts upon which the defendant's motion relied. (Doc. No. 56, at 5–11.) Even without a formal Response to the Statement of Undisputed Facts, the court viewed the facts in the record in the light most favorable to the plaintiff and found that the plaintiff, just barely, stated a *prima facie* case of Title VII retaliation but that he failed to show that TSU's proffered reasons for the adverse employment actions were pretextual. In reaching the latter finding, the court expressly addressed the plaintiff's arguments regarding pretext and noted that he "point[ed] to no evidence in the record from which a reasonable jury could find that the defendant's reasons for terminating the plaintiff are pretextual." (*Id.* at 22.) The court, therefore, granted the Motion for Summary Judgment and dismissed the case. (Doc. No. 57.) Judgment was entered for TSU. (Doc. No. 58.)

Eleven days later, the plaintiff filed his Rule 60 motion, citing Rule 60(b)(1) and (b)(6). In support of his claim for relief under Rule 60(b)(1), he argues that counsel's failure to file his Response to the defendant's Statement of Undisputed Facts and his Statement of Additional Facts

with his other response documents constitutes excusable neglect. He argues that, in reviewing the motion, the court is to consider the factors identified in *Pioneer Investment Services Co. v. Brunswick Assoc. Limited Partnership*, 507 U.S. 380, 392 (1993), including "(1) the danger of prejudice to the other party, (2) the length of delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith." (Doc. No. 60, at 2–3 (other citations omitted).) And, based on these factors, he argues that he is entitled to relief.

Under the "reason for the delay" factor, the plaintiff refers to the Declaration of counsel, in which counsel explains that:

> she has been staying in South Africa since April 3, 2021 with the exception of two months in Namibia from April 3, 2022 – June 1, 2022. South Africa has been experiencing significant "load shedding" of electricity.[3] . . . . The undersigned counsel was experiencing approximately 7.5 hours without electricity during the time she was working on Plaintiff's response. When there is no electricity, there is no internet access. The internet is slow and often fails. When the undersigned counsel was uploading the response and supporting documentation, it took between 1.5 hours and 2.0 hours to upload the Memorandum of Law and supporting documents. Either the ECF system responded a document was corrupted or the undersigned counsel lost internet access due to the instability of the network. After submitting the documents that were submitted, the undersigned counsel lost electricity. The undersigned counsel was not aware the response and opposition to Defendant's Statement of Facts had not filed. The undersigned counsel had another dispositive deadline in another case before this Court on July 20, 2022 and was working diligently to meet that deadline and managing loadshedding. The undersigned counsel was not aware of the mistake until after the Court entered the Order dismissing this case.

(Doc. No. 60, at 5–6 (footnotes and internal citations omitted).) The plaintiff also argues that there is no danger of prejudice to the defendant and only "nominal" impact on the judicial proceedings; that the length of the delay was reasonable; and that there is no evidence of bad faith on the part

---

[3] Counsel defines "load shedding" as the "deliberate shutdown of electric power in a part or parts of a power-distribution system, generally to prevent the failure of the entire system when the demand strains the capacity of the system." (Doc. No. 60, at 5 n.1 (citing https://www.dictionary.com/browse/load-shedding).)

of the plaintiff or his attorney. In the alternative, the plaintiff moves for relief under Rule 60(b)(6), asserting that the plaintiff himself is not at fault for counsel's error and that counsel was struggling with the instability of South Africa's power grid. (Doc. No. 60, at 7.)

In response, the defendant contends that the *Pioneer* factors are not actually controlling under the circumstances here. It argues that, because the plaintiff's failures here amount to inexcusable neglect, relief under Rule 60(b)(1) is not warranted, and, because the plaintiff fails to demonstrate extraordinary circumstances, Rule 60(b)(6) is inapplicable. (Doc. No. 63.)

## II.    RULE 60(b)

The Sixth Circuit strictly upholds the "deeply embedded judicial and legislative policy in favor of keeping final judgments final." *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 865 F.3d 844, 846 (6th Cir. 2017) (citing *Ackermann v. United States*, 340 U.S. 193, 198 (1950); *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). Rule 60(b) provides an exception to this policy, offering "six discrete paths for undoing a final judgment." *Id.* These paths are: (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) newly discovered evidence that could not have been discovered with reasonable diligence in time to move for a new trial; (3) fraud, misrepresentation, or misconduct; (4) "the judgment is void"; (5) either the judgment was satisfied, discharged, or released; it was reversed or vacated; or applying it is "no longer equitable"; and (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)–(6). The moving party carries the burden under Rule 60. *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002) (citing *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001)).

The motion in this case cites only Rule 60(b)(1) and 60(b)(6), and it is apparent that none of the other subsections of Rule 60(b) is relevant.

### III.    DISCUSSION

#### A.    Rule 60(b)(1)—"mistake, inadvertence, surprise, or excusable neglect"

In *Pioneer*, the Supreme Court explained that, for Rule 60(b) purposes, "excusable neglect" includes "situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer*, 507 U.S. at 394. The Court set forth five factors for determining whether neglect is excusable: "the danger of prejudice to [the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. The plaintiff now argues that consideration of these factors warrants relief in his case.

The Sixth Circuit, however, has recognized that "*Pioneer* stands for the proposition that a district court should consider the five factors enumerated above in cases where procedural default has prevented the court from considering the true merits of a party's claim." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001) (citing *Rice v. Consol. Rail Corp.*, No. 94-3963, 1995 WL 570911, at *6 (6th Cir. Sept. 27, 1995); *Amberg v. Fed. Deposit Ins. Corp.*, 934 F.2d 681, 685–86 (5th Cir. 1991)). Where a case is decided on the merits, however, *Pioneer* does not apply. *Id.* at 386; *see also Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012) (noting that the *Pioneer* factors "may help to guide the analysis of excusable neglect" but were "not controlling" in that case, because the district court had considered the merits of the plaintiff's claim when it granted the defendant's motion for summary judgment).

As the Sixth Circuit explained in *Yeschick*, rather than the *Pioneer* factors, in a case in which the court has considered a plaintiff's claims on the merits, the court called upon to determine "whether relief is appropriate under Rule 60(b)(1)" considers three factors: "(1) culpability—that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense.'" *Yeschick*, 675 F.3d at 628 (quoting *Flynn*

*v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457–58 (6th Cir. 2011)). Notably, "[a] party seeking relief must first demonstrate a lack of culpability before the court examines the remaining two factors." *Id.* at 628–29 (quoting *Flynn*, 440 F. Appx. at 458). Clients are held accountable for their attorneys' acts and omissions. *McCurry*, 298 F.3d at 594–95. "Thus, in assessing a claim of excusable neglect, 'the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable.'" *Id.* at 595 (quoting *Pioneer Inv. Servs.*, 507 U.S. at 397) (emphasis in original).

### 1.    Culpability

Plaintiff's counsel claims here that her neglect in failing to file the plaintiff's Response to the defendant's Statement of Undisputed Facts and the plaintiff's own Additional Material Facts constitutes simple oversight on her part, due to the difficulties and the length of time it took her to file the other response documents due to the problems with South Africa's power grid and the frequent load shedding. The court finds that the neglect and lack of diligence in this case are not excusable, for several reasons.

First, plaintiff's counsel herself acknowledges that she had been in South Africa for more than a year by the time she filed (or attempted to file) her client's response documents to TSU's Motion for Summary Judgment. (*See* Doc. No. 60, at 5.) And TSU points out that plaintiff's counsel was well aware of the unpredictable power outages and connectivity issues, which had been an ongoing problem for, at a minimum, several months before the plaintiff's summary judgment response was due. (*See* Doc. Nos. 63-1, 63-2 (deposition transcript from May 2022 and email exchange from June 2022 demonstrating the plaintiff's knowledge of the problems).) Counsel for the plaintiff had already asked for, and been granted, an extension of the summary judgment response deadline, apparently because of the "serious loadshedding for 11.5 hours per day" she was experiencing in late June 2022. (Doc. No. 63-2.) Any reasonable person in her

situation, that is, should have known that filing documents under those circumstances was going to take additional time and attention. However, counsel did not alert the court or opposing counsel at the time of filing that she was having difficulties, nor did she request additional time.

Second, the court cannot accept plaintiff's counsel's claim that she "had no notice" until the court filed the Memorandum and Order granting summary judgment that the Response to the defendant's Statement of Undisputed Facts had not been filed. (Doc. No. 61-1, at 1.) The court takes judicial notice that the court's ECF system automatically generates an email to the parties' counsel of record for *every* electronically filed document. Counsel does not claim that this system malfunctioned or that she was unable to access email for an extended period of time after filing the summary judgment response documents. She, therefore, is presumed to have received an ECF email notice for each of the documents she actually did file—and she would have been placed on notice that the Response to the Statement of Undisputed Facts was *not* filed simply by virtue of not receiving email confirmation that the document had been filed. And, after that, she again received at least constructive notice of the failure through the defendant's filing of its Reply brief, which pointed out the absence of a response to its Statement of Undisputed Facts and the import of that absence. Counsel clearly had an obligation to review the Reply to verify whether it raised some new issue to which a response might be warranted. She apparently did not comply with that obligation either.

Further, regardless of whether she was having difficulty filing documents, plaintiff's counsel at all times had an affirmative duty to monitor the docket, and her failure to do so does not constitute "excusable neglect." *Yeschick*, 675 F.3d at 630; *accord Henken v. IW Tr. Funds*, 568 F. Supp. 3d 870, 875 (S.D. Ohio 2021). In *Yeschick*, the Sixth Circuit upheld the district court's refusal to grant a Rule 60(b)(1) motion after it granted summary judgment against the plaintiff,

where the plaintiff had failed to respond to the motion because the attorney stopped receiving emails from the court. *Yeschick*, 675 F.3d at 627. Finding that the attorney bore the burden of staying apprised of technical difficulties, the Sixth Circuit held that the attorney's failure or refusal to monitor the electronic docket for over a month after he learned that he was not receiving docketing emails was not excusable neglect. *Id.* at 630. The court noted that it had previously affirmed the denial of a Rule 60(b) motion for relief from the entry of a default judgment "where the movant's failure to answer the complaint was due to its failure to read mail sent to a company drop box in a timely manner, and the company's mail policy failed to protect against mail going unread for long periods of time, despite the fact that the mail procedure was within the company's control." *Id.* at 630–31 (citation omitted). Similarly, the court in *Yeschick* found that the attorney had the ability both to update his contact information with the court and to access the court's electronic docketing system directly to monitor filings. *Id.* at 630. The court observed that it had previously held that "gross carelessness or inadvertent conduct that results in judgment will not give rise to a successful claim of excusable neglect if the facts demonstrate a lack of diligence." *Id.* (citations omitted). It concluded that the circumstances in that case similarly warranted a finding of inexcusable neglect, where the attorney (1) knew that his email address had changed; (2) knew or should have known that he was not receiving notice of electronic filings in other cases and that motions were expected in Yeschick's case; (3) failed to diligently update his email address with the court; and (4) failed to monitor the electronic docket. *Id.* at 631.

The same reasoning supports a finding that counsel's failings in this case amount to inexcusable neglect. The misfiling of the Response to the Statement of Undisputed Facts cannot be attributed to South Africa's power grid problems, because counsel was well aware of the problems and could have devised methods to work around them. And plaintiff's counsel did not

merely fail to file the Response to the Statement of Undisputed Facts within the time allotted. She failed to review the ECF email verifications to see what documents had been successfully filed, failed to monitor the electronic docket, and failed to review important documents filed by the opposing party. Plaintiff's counsel's utter lack of diligence does not qualify as excusable neglect.

### 2. Prejudice

Because the moving party must first establish a lack of culpability before the court examines the remaining two factors, the court's inquiry could end here. *Yeschick*, 675 F.3d at 628–29. However, the court also finds that setting aside the summary judgment order and the judgment and permitting the plaintiff to file documents that he should have filed in response to the Motion for Summary Judgment would, under the circumstances presented here, prejudice the defendant.

As the court found in *Yeschick*,

> Prejudice suffered by the party opposing the motion for relief from judgment due to expenditure of resources on discovery and filing a motion for summary judgment, which has been decided on the merits, weighs in favor of finding that attorney oversight constituted inexcusable neglect, even when good faith is found.

*Id.* at 631 (citing *Burnley v. Bosch Ams. Corp.*, 75 F. App'x 329, 333 (6th Cir. 2003)). In *Burnley*, the court found, despite plaintiff's counsel's good faith in filing a Rule 60(b)(1) motion two days after the court granted the defendant's motion for summary judgment, that the defendant "would have been substantially prejudiced" by the granting of the Rule 60 motion, because it had "already expended substantial resources conducting discovery, and filing its motion for summary judgment," and, following dismissal of the plaintiff's claim, it would have been unfair to require the defendant to "expend additional resources litigating" it. *Burnley*, 75 F. App'x at 333.

The same considerations apply here. It would be prejudicial to the defendant to grant the motion and thereby require the defendant to incur additional resources replying to the plaintiff's Response to the defendant's Statement of Undisputed Material Facts, responding to the plaintiff's

proposed Statement of Additional Facts, and redrafting its Reply brief. This factor weighs against granting the motion.

### 3. Meritorious Claim

The plaintiff devotes substantial attention to the *Pioneer* factors, but he makes no effort to show that the facts he disputes in his proposed Response to the defendant's Statement of Undisputed Material Facts and the facts set forth in his proposed Statement of Additional Facts would actually be relevant to the court's finding that he failed to show that the defendant's stated reasons for the adverse actions were pretextual.

As discussed above, the court, in granting the Motion for Summary Judgment, already considered all of the plaintiff's opposing arguments and the evidence he offered in support of them, despite his failure to respond to the defendant's Statement of Undisputed Material Facts. The plaintiff has not shown that he would be able to defeat the Motion for Summary Judgment, even if the court were to grant relief from judgment and grant his request to make the belated filings. This factor, too, weighs against the plaintiff.

### B. Rule 60(b)(6)—"any other reason that justifies relief"

The plaintiff, alternatively, seeks relief under Rule 60(b)(6). (Doc. No. 60, at 6.) Rule 60(b)(6) applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule" and "where principles of equity *mandate* relief." *Olle v. The Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citations omitted). Essentially, this exception requires "something more" than one of the grounds covered by the first five clauses of Rule 60(b*). Tanner v. Yukins*, 776 F.3d 434, 443 (6th Cir. 2015). Nonetheless, before denying relief under Rule 60(b)(6), the court must "intensively balance numerous factors, including the competing policies of the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Blue Diamond Coal Co. v. Trs. of UMWA*

*Combined Benefit Fund*, 249 F.3d 519, 529 (6th Cir. 2001) (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)).

> In support for the claim for relief under this clause, the plaintiff states only:

> In the matter before this Court, Plaintiff has done no wrong. The undersigned counsel has had to manage working with the sporadic and short-noticed loadshedding due to the instability of the power grid. The action seeks to vindicate the constitutional rights of Plaintiff against his former employer.[4] The undersigned counsel's inadvertent mistake of filing the response and opposition to Defendant's Statement of Facts [sentence unfinished in original]

(Doc. No. 60, at 7.) This showing is simply not sufficient. As set forth above, clients are held accountable for their attorneys' acts and omissions. *McCurry*, 298 F.3d at 594–95. Moreover, counsel cannot blame her failures on the instability of the power grid in South Africa where she chose to practice law in this district while living in South Africa for an extended period of time, and she had advance knowledge of the load shedding issue, putting her on notice of the need to start early and to verify transmission of documents. The fact that the plaintiff seeks to vindicate federal statutory rights is immaterial where the plaintiff has not shown a likelihood of relief on the merits if the court did grant the Rule 60 motion.

Finally, counsel's mistakes amount simply to garden-variety inexcusable neglect. Generally, while the Sixth Circuit has, "[i]n rare cases, . . . found a lawyer's failures sufficiently egregious to warrant relief under Rule 60(b)(6)," *Doyle v. Mut. of Omaha Ins. Co.*, 504 F. Appx. 380, 383 (6th Cir. 2012) (collecting cases),[5] the average "attorney error" will not satisfy "this

---

[4] The plaintiff seeks to vindicate federal statutory rights, not constitutional rights.

[5] *Doyle* and the cases cited therein involved situations where the attorneys effectively abandoned their clients. *See, e.g., Doyle*, 504 F. App'x at 382 (finding that the district court did not abuse its discretion in setting aside judgment after finding that "the profound failures of Doyle's attorney to prosecute his case amounted to an 'extraordinary circumstance'"); *Fuller v. Quire*, 916 F.2d 358, 361 (6th Cir.1990) (holding that a district court acted within its discretion in granting 60(b)(6) relief vacating judgment after attorney failed to attend docket call and failed to inform the client of the dismissal for more than a year despite the client's frequent inquiries);

rigorous standard" *McCurry*, 298 F.3d at 596; *see also Pioneer Inv. Servs.*, 507 U.S. at 393 ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought . . . under subsection (1) and the party's neglect must be excusable." (internal citations omitted)).

In short, nothing in this case presents an "extraordinary circumstance" justifying relief under Rule 60(b)(6). The plaintiff's attorney's failures to check the electronic docket and verify, in a timely fashion, whether the plaintiff's response to the defendant's Statement of Undisputed Material Facts had been filed, while constituting inexcusable neglect, do not amount to the kind of extreme misconduct worthy of Rule 60(b)(6) relief. *See Travelers Cas. & Sur. Co. of Am. v. J.O.A. Constr. Co.*, 479 F. Appx. 684, 696–98 (6th Cir. 2012) (affirming district court's denial of Rule 60(b)(6) motion where attorney's failure to perform diligently was not extreme misconduct). Moreover, the court's interest in finality is not outweighed by any countervailing concerns. *See Blue Diamond Coal Co.*, 249 F.3d at 528 (noting that some courts have found Rule 60(b)(6) relief appropriate "in cases where the interest in finality is somehow abrogated"). Relief under Rule 60(b)(6) is not appropriate.

## IV. CONCLUSION

The plaintiff has not established excusable neglect so as to justify relief under Rule 60(b)(1), nor has he shown extraordinary circumstances that would justify relief under Rule

---

*Valvoline Instant Oil Change Franchising, Inc. v. Autocare Assocs., Inc.*, 173 F.3d 857 (Table), 1999 WL 98590, at *4–6 (6th Cir. Jan. 26, 1999) (reversing the district court and granting 60(b)(6) relief from a default judgment entered after an attorney lied to his clients about the status of their case, failed to appear at depositions, failed to file a response to a motion for summary judgment, and failed to make other required filings). *See also Contra Reno v. Int'l Harvester Co.*, 115 F.R.D. 6, 8–10 (S.D. Ohio 1986) (granting Rule 60(b)(6) motion where counsel totally abandoned plaintiff's case).

60(b)(6). The court, in the exercise of its discretion, will therefore deny the plaintiff's Rule 60

Motion for Relief from Judgment or Order (Doc. No. 59).

Because the court declines to grant relief from judgment and will not vacate the Order

granting summary judgment or the Judgment, the belated Motion for an Extension of Time to File

Plaintiff's Response to Defendant's Statement of Facts and Plaintiff's Additional Material Facts

in Dispute (Doc. No. 61) will be denied as moot.

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge